MARA W. ELLIOTT, City Attorney
M. TRAVIS PHELPS, Assistant City Attorney
CATHERINE A. RICHARDSON, Senior Chief Deputy City Attorney
California State Bar No. 137757
  Office of the City Attorney
  1200 Third Avenue, Suite 1100
  San Diego, California 92101-4100
  Telephone: (619) 533-5800
  Facsimile: (619) 533-5856

Attorneys for Defendant, Todd Gloria, individually and
As the Mayor of the City of San Diego

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS HODGES, an individual,<br><br>   Plaintiff,<br><br>  v.<br><br>TODD GLORIA, both in his personal capacity and in his official capacity as the Mayor of the City of San Diego,<br><br>   Defendants. | Case No. 23-cv-02065-W-MSB<br><br>**DEFENDANT TODD GLORIA'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>Date: January 22, 2024<br>Time: N/A<br>Judge: Hon. Thomas J. Whelan<br>Court Room: 3C |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................ 4

II. HODGES' ALLEGATIONS ...................................................................... 4

III. LEGAL STANDARD ................................................................................ 6

IV. EACH OF HODGES' CAUSES OF ACTION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............................................. 8

V. HODGES CANNOT STATE A FIRST AMENDMENT CLAIM BASED ON HIS REMOVAL FROM THE POLITICAL "ADVISORY BOARD" BY THE VERY POLITICIAN WHO PUT HIM THERE ..................................... 9

VI. QUALIFIED IMMUNITY BARS HODGES' CLAIMS AGAINST MAYOR GLORIA IN HIS PERSONAL CAPACITY ................................................ 16

VII. LEAVE TO AMEND SHOULD BE DENIED ............................................. 17

VIII. CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Act Up!/Portland v. Bagley*
  988 F.2d 868 (9th Cir. 1993) ............................................................................. 16

*Arizona Students' Ass'n v. Arizona Bd. of Regents*
  824 F. 3d 858 (9th Cir. 2016) ............................................................................ 17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................................... 7, 16

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ......................................................................................... 6, 7

*Blair v. Bethel School District*
  608 F. 3d 540 (2010) ............................................................................... 9, 10, 15

*Broam v. Bogan*
  320 F. 3d 1023 (9th Cir. 2003) ............................................................................. 7

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*
  824 F. 3d 1156 (9th Cir. 2016) ............................................................................. 7

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982) ............................................................................................ 16

*Hobler v. Brueher*
  325 F. 3d 1145 (9th Cir. 2003) ..................................................................... 12, 13

*Ivey v. Board of Regents of the University of Alaska*
  673 F. 2d 266 (9th Cir. 1982) ............................................................................... 7

*Kentucky v. Graham*
  473 U.S. 159 (1985) ............................................................................................ 16

*Lathus v. City of Huntington Beach*
  56 F. 4th 1238 (2023) ............................................................. 11, 12, 13, 15, 17

*Mullenix v. Luna*
  577 U.S. 7 (2015) ................................................................................................ 16

*Saucier v. Katz*
  533 U.S. 194 (2001) ............................................................................................ 16

*Shafer v. Cty. of Santa Barbara*
  868 F. 3d 1110 (9th Cir. 2017) ........................................................................... 17

*Sharp v. Cty. of Orange*
  871 F. 3d 901 (9th Cir. 2017) ............................................................................. 17

*Weber v. Dep't of Veterans Affairs*
  521 F. 3d 1061 (9th Cir. 2008) ............................................................................. 7

**Statutes**

42 U.S. Code § 1983 ............................................................................................ 4, 8

Fed. R. Civ. Proc., Rule 12(b)(6) ........................................................................ 6, 7

## I. INTRODUCTION

Plaintiff Dennis Hodges (Hodges) brings this action under 42 U.S. Code § 1983. He claims his First Amendment rights were violated when the defendant, City of San Diego Mayor Todd Gloria (Mayor Gloria), vetoed his re-appointment to the City's Citizens Advisory Board on Police/Community Relations. The Advisory Board is an unpaid political body that is charged with advising the City Council on certain community issues. Mayor Gloria has the authority to appoint members to the Advisory Board. He also has the authority to veto those appointments. Hodges claims Mayor Gloria's veto of his re-appointment violated his Free Speech Rights under the Constitution and deprived him of his civil rights in retaliation for his speech.

Ninth Circuit precedent recognizes that political appointees such as Hodges are the "public face" of their appointors and can undermine the appointors' "credibility and goals," and therefore can be dismissed for lack of political compatibility. Hodges' appointment to the Advisory Board was a political appointment which Mayor Gloria had the right to veto. The First Amendment therefore does not immunize Hodges from the political fallout of his speech. Here, that political fallout was Mayor Gloria's veto of Hodges' re-appointment to the Advisory Board. Hodges cannot state a claim for violation of his First Amendment rights under the facts of this case. The motion to dismiss should therefore be granted.

## II. HODGES' ALLEGATIONS

In his Verified Complaint for Declaratory and Injunctive Relief and Damages (Complaint)(ECF No. 1), Hodges alleges that since 2017, Mr. Hodges has served on the City of San Diego's Citizens Advisory Board on Police/Community Relations (Advisory Board), and since 2021, he has served as a commissioner on

///

///

1 | the San Diego County Human Relations Commission (County Commission).
2 | (Complaint, ¶ ¶ 3, 25-26.)
3 |       Hodges filed this action against Mayor Gloria in both his official and
4 | personal capacities for prohibiting the confirmation of Hodges' reappointment to
5 | the Advisory Board. (Complaint, ¶ 12.)
6 |       Pursuant to San Diego Municipal Code (SDMC) Section 26.0801, the
7 | purpose of the Advisory Board is to "study, consult and advise the Mayor, City
8 | Council and City Manager on Police/Community Relations crime prevention
9 | efforts." (Complaint, ¶ 21.)
10 |       Hodges has vocalized that he believes transgenderism is a sin just like
11 | adultery and fornication. (Complaint, ¶ 33.)
12 |       On November 9, 2021, during Transgender Awareness Month, the County
13 | Commission discussed an agenda item intended to amplify the voices of the San
14 | Diego transgender community. Under the County Commission's Rules of Order,
15 | Mr. Hodges abstained from voting on the motion because of his beliefs.
16 | (Complaint, ¶¶ 35-36.)
17 |       Thereafter, on May 31, 2022, the County Commission circulated a notice of
18 | removal of Hodges to all commissioners on the grounds Hodges violated the
19 | commission's Code of Conduct and Bylaws by saying "discriminatory and
20 | harassing remarks" towards members of the LGBTQ community. (Complaint, ¶¶
21 | 39-40.) The County Commission held a special meeting but the motion to remove
22 | Hodges failed. (Complaint, 49-50.)
23 |       During the County Commission's June 2023 board meeting, one of the
24 | commissioners expressed her opinion that Hodges should not be on the commission
25 | because of his remarks about the LGBTQ community. (Complaint, ¶ 51.)
26 | Thereafter, in July 2023, the San Diego Union Tribune wrote an editorial
27 | encouraging the removal of Mr. Hodges from the County Commission. (Complaint,
28 | ¶ 52.)

1   On August 8, 2023, Mayor Gloria used his veto authority, pursuant to the
2   Charter of the City of San Diego, City Charter Section 280, to veto the
3   reappointment of Hodges to the Advisory Board because of his comments
4   regarding the transgender community. (Complaint, ¶ 54.) In the memorandum
5   vetoing Hodges' reappointment, Mayor Gloria explained that because Mr. Hodges
6   "has made repeated concerning public comments about LGBTQ people -
7   specifically, the transgender community," he could not "support [Mr. Hodge's]
8   reappointment to a Board tasked with promoting a positive relationship between the
9   Police Department and the community it serves." (Complaint, ¶ 55.)

Hodges then filed this lawsuit, alleging the following causes of action:

A. FIRST CAUSE OF ACTION: Violation of the Free Exercise Clause of the First Amendment to the United States Constitution (42 U.S.C. § 1983);

B. SECOND CAUSE OF ACTION: Violation of the Free Speech Clause of the First Amendment to the United States Constitution (42 U.S.C. § 1983); and

C. THIRD CAUSE OF ACTION: First Amendment Retaliation (42 U.S.C. § 1983).

These allegations state nothing more than the ordinary functioning of the political process. As such, they do not give rise to a claim for a violation of Hodges' First Amendment rights, and this motion to dismiss should be granted without leave to amend.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), a party may move to dismiss if the complaint fails to state a claim upon which relief can be granted. For purposes of Rule 12(b)(6), "claim" means a set of facts that, if established, entitle the pleader to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) dismissal is proper when the complaint either: (1) fails to allege a "cognizable legal theory"; or (2) fails to allege sufficient facts "to support a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at p. 570. Hodges' Complaint fails to meet these requirements.

In ruling on a Rule 12(b)(6) motion, a court must construe the pleadings "in the light most favorable to the plaintiff" and, further, "must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *Bell Atlantic Corp. v. Twombly, supra*, 550 U.S. at p. 555 [courts "are not bound to accept as true a legal conclusion couched as a factual allegation."]

Furthermore, the federal rules require more than an "unadorned the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, while specific detail is not required, every complaint must, at a minimum, still plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at p. 547; *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at p. 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

7
23-cv-02065-W-MSB

requires the reviewing court to draw on its judicial experience and common sense." *Id.* at p. 679.

Here, Hodges has failed to allege sufficient facts to state a claim for relief against Mayor Gloria, either in his personal or official capacity, that "is plausible on its face." Moreover, Mayor Gloria is entitled to qualified immunity as a matter of law. The motion to dismiss should be granted.

## IV. EACH OF HODGES' CAUSES OF ACTION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Complaint alleges three claims for relief, each of which is brought under 42 U.S.C. section 1983. The First Cause of Action is entitled Violation of the Free Exercise Clause of the First Amendment to the United States Constitution (42 U.S.C. § 1983), and alleges Mayor Gloria violated Hodges' First Amendment "right to freely exercise his religion." (Complaint, ¶¶ 63, 66.) The Second Cause of Action is entitled Violation of the Free Speech Clause of the First Amendment to the United States Constitution (42 U.S.C. § 1983), and alleges the Mayor's exercise of his veto authority was an attempt "to regulate Mr. Hodges' speech, including his religious speech. (Complaint, ¶ 76.) Finally, the Third Cause of Action is entitled First Amendment Retaliation (42 U.S.C. § 1983), and alleges the Mayor retaliated against Hodges "by exercising his veto authority to prevent the reappointment of Mr. Hodges to the Advisory Board." (Complaint, ¶ 88.)

Thus, the crux of all three of Hodges' causes of action is that the loss of his position on the Advisory Board, as a response to or in retaliation for Hodges engaging in certain speech, violated Hodges' rights under the First Amendment. None of them state a claim for relief.

/ / /
/ / /
/ / /
/ / /

V. **HODGES CANNOT STATE A FIRST AMENDMENT CLAIM BASED ON THE VETO OF HIS RE-APPOINTMENT TO THE POLITICAL "ADVISORY BOARD" BY THE VERY POLITICIAN WHO PUT HIM THERE**

In *Blair v. Bethel School District*, 608 F.3d 540 (2010), the Ninth Circuit Court of Appeals considered for the first time a First Amendment retaliation claim that arose "in the context of the political process and public debate." *Id*. at p. 546. There, the plaintiff school board member claimed that his First Amendment rights were violated when he was stripped of his position as vice president of the board in retaliation for publicly criticizing the school superintendent. *Id.* at p. 543.

The *Blair* court noted that, for a plaintiff to recover under section 1982 on a retaliation claim, plaintiff must typically prove: "(1) ) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Id.* at p. 543. The court also noted, however, that Blair's case was "not a typical First Amendment retaliation case" because Blair was challenging the adverse action "taken by his peers in the political arena." *Id.*

In fact, Blair's claim had "little in common" with stereotypical First Amendment retaliation claims. *Blair*, at p. 544. Rather, "[t]hrough the ordinary functioning of the democratic process, [plaintiff] was removed from a titular position on a school board by the very people who elected him to the position in the first place." *Id.* The *Blair* court noted that "more is fair in electoral politics than in other contexts," that "the First Amendment does not succor casualties of the regular functioning of the political process" or "shield public figures from the give-and-take of the political process." *Id.* at pp. 543, 544, 545. In fact, it is expected that political officials will "cast votes in internal elections in a manner that is,

technically speaking, retaliatory, i.e., to vote against candidates whose views differ from their own." *Id.* at p. 544.

Thus, the Ninth Circuit could not conceive of any "difference between what the Board's internal vote against [the plaintiff] accomplished and what voters in a general public election might do" and saw "no reason the Board members' votes here should be regulated in a way that the general public's are not." *Blair,.* at p. 545. The court further explained why cases involving politics and political appointments do not represent a typical First Amendment retaliation case:

> What's different here is the "adverse action" Blair is challenging was taken by his peers in the political arena. The record makes clear that Blair's fellow Board members wanted a vice president who shared their views. Because Blair didn't, they removed him by a procedurally legitimate vote.

*Id.* at pp. 543-544.

The Ninth Circuit summarized Blair's plight as follows: "Through the ordinary functioning of the democratic process, he was removed from a titular position on a school board by the very people who elected him to the position in the first place." *Blair*, 608 F.3d at 544. In fact, the court noted, actions such as Blair's removal from the Advisory Board by the councilmember who put him there, are themselves protected by the First Amendment. *Id*. at p. 545.

As a result, the court held that, while Blair "certainly had a First Amendment Right to criticize [the superintendent] and vote against his retention as superintendent, his fellow Board members had the corresponding right to replace Blair with someone who, in their view, represented the majority view of the Board." *Blair*, at pp. 545-46. Thus, even though "the impetus to remove Blair…undoubtedly stemmed from his contrarian advocacy …the Board's action did not amount to retaliation in violation of the First Amendment." *Id*. at p. 546.

/ / /

Even more analogous to the facts of this case is the very recent case of *Lathus v. City of Huntington Beach*, 56 F.4th 1238 (2023). In *Lathus*, the Ninth Circuit considered the same issue presented here: "[W]hether the First Amendment protects a volunteer member of a municipal advisory board from dismissal by the city councilperson who appointed her and is authorized under a city ordinance to remove her." *Id*. at p. 1239. After considering the issue, the court held: "Because the advisory board member is the 'public face' of the elected official who appointed her to the body, we hold that she 'can be fired for purely political reasons.'" *Id*.

In *Lathus,* plaintiff Shayna Lathus was appointed by Huntington Beach City Councilperson Kim Carr to the city's Citizen Participation Advisory Board (CPAB). *Id.* at p. 1239. Under the Huntington Beach Municipal Code, each councilperson appoints one member to the board and may remove that member without cause. *Id*. The CPAB's mandate is to "provide citizen participation and coordination in the City's planning processes," with an emphasis on "addressing issues faced by 'low and moderate income households,' 'assess the needs of the community,' and 'provide specific recommendations' to the City Council." *Id*.

After Lathus was appointed to the CPAB, she was photographed at a rally standing near people whom Carr believed to be members of Antifa. *Lathus,* at pp. 1239-40. As a result, Carr instructed Lathus to write a public statement denouncing Antifa; Lathus complied, believing that her position on the CPAB depended on it. *Id.* at p. 1240. Carr did not believe the statement to be sufficient, removed Lathus from the board and stated that "'[t]hose that do not immediately denounce hateful, violent groups do not share my values and will not be a part of my team." *Id.*

Lathus sued the city under U.S.C. Section 1983 and claimed retaliation for exercising her First Amendment rights to free speech, association and assembly. *Lathus,* at p. 1240. She also alleged that Carr's demand that Lathus issue a public statement amounted to unconstitutionally compelled speech. *Id.* The district court

dismissed the complaint, "holding that under *Blair*… 'Carr was not politically powerless to disassociate herself from Plaintiff's public actions through a process that authorized appointment and removal in Carr's sole discretion." *Id*. Thus, Carr was permitted to "consider the political ramifications not only when she decided to appoint Plaintiff but also when she later elected to remove her from the public position." *Id*.

The Ninth Circuit agreed with the district court "that the critical issue is whether Lathus was effectively a 'political extension' of Carr on the CPAB." *Lathus,* at p. 1240. After concluding that, "under this particular statutory scheme, Lathus was effectively Carr's 'public face' on the CPAB," the Ninth Circuit affirmed the district court. *Id.*

In reaching its conclusion, the Ninth Circuit first noted the differences between that case and *Blair*, including the fact that Lathus was an appointed volunteer in public service, not an elected official, and that Lathus did not lose her appointment through a vote of her fellow board members nor was her removal the result of an "'internal political leadership election.'" *Lathus*, at p. 1241.

Notwithstanding the differences, however, the court noted that *Blair* "makes clear that the First Amendment rights of government officials are not absolute. It is settled, for example, that an appointed public official can be removed for engaging in otherwise protected First Amendment activity if 'political affiliation is an appropriate requirement for the effective performance of the public office involved.'" *Lathus*, at p. 1241, quoting *Hobler v. Brueher*, 325 F.3d 1145, 1154 (9th Cir. 2003). Thus, the court's job was to determine whether "'commonality of political purpose'" with Carr was an appropriate requirement for Lathus' service on the board. *Lathus*, at p. 1241.

To make this determination, the court looked to the statute establishing the position because it was "likely to provide the best foundation for classifying it for … First Amendment purposes." *Lathus*, at p. 1241. Huntington Beach Municipal

Code laid out the procedure for appointing and removing board members, and provides for the board to hold regular monthly meetings open to the public. *Id*. at 1242.

By design, the board was intended to influence the city council's decisions on housing programs and was "a conduit between the community and City Council." *Lathus*, at p. 1242. It "advises on matters of policy and solicits public feedback," and, therefore, board members necessarily "speak to 'the public and to other policymakers on behalf of the official' who appointed them." *Id.,* quoting *Hobler, supra*, 325 F.3d at p 1155. This, the *Lathus* court said, was a "factor that indicates 'responsiveness to partisan politics and political leaders.'" *Lathus*, at p. 1242, quoting *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1334 n.5 (9th Cir. 1997.)

As a result, the public could infer that a CPAB board member's actions or statements reflect the appointing councilperson's views and goals and that "Lathus was Carr's 'public face' on the board." *Lathus*, at p. 1242. Thus, "the public was entitled to assume that she spoke on Carr's behalf," and, because a board member is "'an adviser [who] formulates plans for the implementation of broad goals'…, "a councilperson is entitled to an appointee who represents her political outlook and priorities." *Id*. The Ninth Circuit therefore concluded that, because Lathus "could plainly 'undermine [Carr's] credibility and goals,'" she could be dismissed "for lack of political compatibility." *Id.*

Hodges' claims fall squarely within the above precedent. Hodges admits he was appointed to the Advisory Board pursuant to the SDMC. (Complaint, ¶21). In this regard, SDMC section 26.0802 establishes the Advisory Board, consisting of 15 volunteer members. The members "shall be appointed by the Mayor and confirmed by the Council." The appointments are for two-year terms, with each member serving until "his or her successor is duly appointed and qualified." *Id*. The

/ / /

Advisory Board conducts meeting and other activities, including the establishment of subcommittees. SDMC § 26.0803(a).

The purpose and intent of the Advisory Board is to "study, consult and advise the Mayor, City Council and City Manager on Police/Community Relations crime prevention efforts." SDMC §26.0801. In addition, the Board "shall function as a method of community participation" and "shall actively encourage and foster citizen participation in crime prevention activities." *Id*. Moreover, the Advisory Board was intended to "promote and encourage open communication between the Police Department and residents of the City." *Id.* Indeed, Hodges admits that, in his role on the Advisory Board, he "served as a bridge between law enforcement and the community and sought to build trust between the public and law enforcement." (Complaint, ¶ 22.)

Hodges also admits that he "has vocalized that transgenderism is a sin just like adultery and fornication." (Complaint, ¶33.) In fact, during Transgender Awareness Month, in his position as a commissioner on the County Commission, he abstained from voting on an agenda item intended to amplify the voices of the San Diego transgender community, and also made public comments related to the reasons behind his abstention. (Complaint, ¶¶ 6, 35.) He admits that the County Commission unsuccessfully attempted to remove him "because of his remarks on the LGTBQ community," and that in July 2023, the San Diego Union Tribune published "an editorial encouraging the removal of Mr. Hodges from the Commission." (*Id.,* ¶¶ 51-52.)

Moreover, Hodges admits that on August 8, 2023, Mayor Gloria "used his veto authority, pursuant to Charter of the City of San Diego Section 280,"[1] to veto Hodge's reappointment to the Advisory Board "because of his comments regarding the transgender community." (Complaint, ¶ 54.) And he admits that in the memo

---

[1] Charter Section 280(a) authorizes the Mayor "[t]o approve or veto actions passed by the Council in open session…."

vetoing Hodges' reappointment, Mayor Gloria stated the reason for the veto was Hodges' "repeated concerning comments about LGBTQ people—specifically, the transgender community," and that he therefore could not "support [Mr. Hodges'] reappointment to a Board tasked with promoting a positive relationship between the Police Department and the community it serves." (Complaint, ¶ 55.)

According to Hodges, the Mayor's veto violated his rights under the First Amendment. As discussed above, however, the Ninth Circuit rejected very similar claims in *Lathus* and *Blair*. The holdings in these cases are premised on the notion that certain positions - such as appointment to the Advisory Board - are political in nature, and it is not only appropriate but expected that a person's entitlement to such positions will be based on their political affiliations and public statements. *Blair*, 608 F.3d at 544, 545.

In fact, far from violating the affected party's First Amendment rights, the Ninth Circuit has recognized that a decision to appoint or remove a person from such a position constitutes an exercise of the decisionmaker's First Amendment rights:

> [W]hile [the plaintiff] certainly had a First Amendment right to criticize [the superintendent] and vote against his retention as superintendent, his fellow Board members had the corresponding right to replace [the plaintiff] with someone who, in their view, represented the majority view of the Board.

*Blair*, at pp. 545-546.

Indeed, "through the ordinary functioning of the democratic process," Hodges' reappointment to the Advisory Board was vetoed "by the very people who elected him to the position in the first place." *Blair*, 608 F.3d at 544. In fact, in deciding to remove Hodges from the position, Mayor Gloria exercised his veto authority under the City Charter, which Hodges admits he had (Complaint, ¶ 54), as

/ / /

well as his own First Amendment rights, by distancing himself from Hodges for his public comments regarding the transgender community. *Id.* at 545.

Hodges' position on the Advisory Board and Mayor Gloria's veto of his reappointment were both political in nature. Because Ninth Circuit jurisprudence does not recognize claims for First Amendment violations in this context, each of Hodges' claims for relief should be dismissed in their entirety.

## VI. QUALIFIED IMMUNITY BARS HODGES' CLAIMS AGAINST MAYOR GLORIA IN HIS PERSONAL CAPACITY

To the extent Mayor Gloria has been sued in his personal capacity, he is also entitled to qualified immunity in this action. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). In this regard, a government official performing a discretionary function is generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. at pp. 817–18.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11(2015) (quotations omitted). "The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). The inquiry requires courts to determine if "the violative nature of particular conduct is clearly established" (*Id.* at 742), and therefore "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

"Clearly established law" does not require "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. "It is the plaintiff who bears the burden of

/ / /

showing that the rights allegedly violated were 'clearly established.'" *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (quotations omitted). A plaintiff must "point to" controlling case authority—either from the Ninth Circuit or Supreme Court "or otherwise . . . embraced by a 'consensus' of courts outside the relevant jurisdiction" to show that the right is clearly established. *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

Here, Mayor Gloria was exercising his discretion when he vetoed Hodges' reappointment to the Advisory Board. Mayor Gloria admittedly had the authority to veto Hodges' reappointment. Moreover, Hodges fails to allege a constitutional violation of his First Amendment rights. Thus, as a matter of law, Mayor Gloria is entitled to qualified immunity on the first prong of the qualified immunity analysis alone. Moreover, even if Hodges had made a colorable constitutional claim, there is no clearly established law holding that the veto of a volunteer advisory board member's reappointment by the person who appointed him in the first place, violates the First Amendment. In fact, just the opposite.

As a matter of law, Mayor Gloria is entitled to qualified immunity.

## VII. LEAVE TO AMEND SHOULD BE DENIED

A denial of leave to amend is appropriate where it is clear that granting leave to amend would be futile. *Lathus, supra,* at p. 1243; *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016).

Here, given the undisputed political nature of the Advisory Board and Mayor Gloria's authority to veto Hodges' reappointment to the board, Hodges cannot establish any cognizable violation of the First Amendment and the deficiencies in the Complaint therefore cannot be cured by an amendment. Mayor Gloria therefore requests that leave to amend be denied.

## VIII. CONCLUSION

Given the statutory structure and duties of the Advisory Board, Hodges, like the other board members, was the "public face" of his appointor, Mayor Gloria.

1  Hodges' position and public statements against the LGBTQ community could
2  plainly undermine the Mayor's credibility and goals and therefore Mayor Gloria
3  could veto Hodges' reappointment "for lack of political compatibility." For the
4  reasons set forth above, Mayor Gloria respectfully requests that the Complaint be
5  dismissed in its entirety without leave to amend.

Dated:  December 7, 2023            MARA W. ELLIOTT, City Attorney

By  */s/ Catherine A. Richardson*
    Catherine A. Richardson
    Senior Chief Deputy City Attorney

Attorneys for Defendant Todd Gloria